# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 97-CC-01376 COA

**ABC MANUFACTURING CORPORATION AND CONTINENTAL
CASUALTY COMPANY (CNA INSURANCE COMPANY)**                     **APPELLANTS**

**v.**

**MARTHA JANE DOYLE**                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/24/97 |
| TRIAL JUDGE: | HON. HENRY LAFAYETTE LACKEY |
| COURT FROM WHICH APPEALED: | BENTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | DENNIS W. VOGE |
| ATTORNEY FOR APPELLEE: | B. SEAN AKINS |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| TRIAL COURT DISPOSITION: | REVERSAL OF WORKERS' COMPENSATION COMMISSION'S DISMISSAL OF CLAIM AS BARRED BY STATUTE OF LIMITATIONS |
| DISPOSITION: | REVERSED AND RENDERED - 12/30/98 |
| MOTION FOR REHEARING FILED: | 1/19/99 |
| CERTIORARI FILED: | 4/20/99 |
| MANDATE ISSUED: | |

BEFORE BRIDGES, C.J., HINKEBEIN, AND KING, JJ.

HINKEBEIN, J., FOR THE COURT:

¶1. This is an appeal by ABC Manufacturing Corporation and its Workers' Compensation Carrier, Continental Casualty Company, from an order of the Benton County Circuit Court reversing the prior decision of the administrative law judge as affirmed by the full Commission. Aggrieved by the circuit court's conclusion that both the ALJ and Commission were arbitrary and capricious in dismissing claimant Martha Jane Doyle's claim, ABC appeals on the following ground:

**I. WHETHER THERE EXISTS SUBSTANTIAL EVIDENCE INDICATING THAT DOYLE
FAILED TO MAKE APPLICATION FOR COMPENSATION WITHIN THE APPLICABLE**

**ONE-YEAR STATUTE OF LIMITATIONS**.

Due to the great deference we give to the findings of the Commission, we reverse the circuit court and reinstate the order of the Workers' Compensation Commission.

## FACTS

¶2. The relevant facts in this case are essentially undisputed. Doyle injured her back in the course of her employment as a sewing machine operator at ABC on February 2, 1993. During the following months she sought medical treatment from various physicians and concurrently received temporary total disability benefits through June 4, 1993 when she was released to return to work based on a finding that she had long since reached maximum medical improvement. Nevertheless, Mrs. Doyle continued to allege that she was in considerable pain and consequently refused to return to ABC. Thereafter, ABC filed with the Commission a "Notice of Controversy" and form B-31 Final Report and Settlement Receipt on August 18 and October 20 respectively. The former sought a hearing by which certain aspects of Doyle's claim, including, but not limited to, the true origin of her injury as well as her purported continuing inability to perform assigned duties, might be addressed. The latter, of which Doyle was made aware by certified mail on October 25, notified the Commission that the final payment of compensation in the amount of $2,394.99 had been made.

¶3. Although form B-31 clearly warned that "the closing of this file may become final one year after the proper filing of this form," Doyle had no notable contact with either ABC, the carrier, or the Commission until June 4, 1994 when Doyle's attorneys filed with the Commission a Petition for Acceptance of Representation and Entry of Appearance. Thereafter, several additional months passed before any action was taken in the case. Doyle's counsel finally filed a form B-5, 11 Petition to Controvert on April 12, 1995. The reason for this lengthy silence is not entirely clear as Doyle had been continuing to see doctors of her own choosing on a reasonably regular basis from mid-1993 through November of 1994. However, the record suggests that the eventual loss of her own health benefits, by which she had financed the balance of the associated cost, played some role in her decision to pursue funding from an alternative source. In any event, on May 3, ABC and its carrier answered, raising as an affirmative defense the one year statute of limitations as defined by § 71-3-53 of the Code. Following the substitution of present counsel who has since pursued this matter with reasonable diligence and promptness, Doyle's case proceeded toward an April 1996 hearing before the ALJ. After both the ALJ and full Commission found her claim to be barred as alleged, Doyle successfully appealed to the circuit court, whose order we are presently asked to review.

## ANALYSIS

**I. WHETHER THERE EXISTS SUBSTANTIAL EVIDENCE INDICATING THAT DOYLE FAILED TO MAKE APPLICATION FOR COMPENSATION WITH THE APPLICABLE ONE YEAR STATUTE OF LIMITATIONS.**

¶4. From the outset we recognize that "the circuit courts must defer in their review to the findings of the Commission," interfering only in those instances where the agency's action may be characterized as arbitrary and capricious. *Harper v. North Mississippi Med. Ctr.,* 601 So. 2d 395, 397 (Miss. 1992). (citations omitted). Therefore, when a decision of the Commission is based upon substantial evidence, the circuit court, as well as this Court, is bound by the Commission's finding of fact. *Id.* With this in mind, we begin by

examining the legal context in which the agency reached its decision.

¶5. Mississippi Workers' Compensation Law contains two provisions which impose important time limitations upon claims for benefits. The two-year statute, which appears in § 71-3-35 (1), applies in instances where there has been no payment of disability income benefits or nonburial death benefits. Mississippi Code Annotated § 71-3-35(1) (Rev. 1995). The one-year statute of § 71-3-53, with which we must contend today, operates elsewhere in conjunction with § 71-3-37 (7), the Mississippi Workers' Compensation Commission's Procedural Rule 17, and the Commission's form B-31. Miss. Code Ann. §§ 71-3-53, 71-3-37(1); Mississippi Workers' Compensation Commission Procedural Rule 17. Form B-31 gives notice to the employee, as required by due process of law, that the employer considers its obligation at an end and that his/her rights to benefits may be lost if the matter remains dormant for the next year. WCC Procedural Rule 17. In other words, the statute begins running with its proper filing.

¶6. In its order, the circuit court cited three separate events which purportedly tolled the running of the statute in this case: (1) ABC's August 18, 1993 Notice of Controversy as filed with the Commission, (2) the June 4, 1994 Entry of Appearance filed by Doyle's former counsel, and (3) an alleged June 30, 1994 submission to the carrier of both a written demand for payment and Doyle's associated unpaid medical bills. We will address each in turn.

### *ABC's Notice of Controversy*

¶7. Doyle defends the circuit court's unsupported conclusion that ABC's Notice of Controversy tolled the statute by arguing that the pleading effectively controverted the claim as envisioned by the Commission's procedural rules. Therefore, due to the express request of ABC viewed in conjunction with an alleged statutory command, he contends that it triggered an obligation on the part of the commission to hold a hearing in the case. In that vein, she claims that not only was there "no reason" for her to file a response, but that the agency's failure to schedule such a proceeding was arbitrary and capricious, thereby invalidating the subsequently filed form B-31 and indefinitely staying the statute of limitations. In response, ABC argues that the pleading did not serve to controvert Doyle's claim as envisioned by applicable rules and therefore could not have mandated that the Commission proceed with its duties. While we agree with Doyle's basic interpretation regarding the joint operation of the implicated rules and statutory provisions, we disagree with her conclusion as to their application in the instant case. ABC is correct in its contention that because the Notice of Controversy was filed months after the relevant injury, it therefore failed to properly controvert the claim. As a consequence, we cannot characterize the agency's failure to schedule a hearing in this matter as either arbitrary or capricious and do not believe that the subsequently filed form B-31 should be considered wholly ineffective.

¶8. Specifically, Doyle alleges that the following language from Mississippi Workers' Compensation Procedural Rule 2 allows either employee or employer to controvert a case pursuant to § 71-3-37 (4) by filing with the Commission the delineated forms:

> PROCEDURE TO CONTROVERT. A cause will be controverted by the employee's filing with the Mississippi Workers' Compensation Commission a properly executed Workers' Compensation Form B-5,11. In the event an employer desires to file a notice of controversion pursuant to Mississippi Code Annotated Section 71-3-37 (4) (1972), the employer or carrier shall file an original and two copies of Commission Form B-52, notice of controversion . . . ."

WCC Procedural Rule 2. She reasons that such action on the part of either necessarily implicates § 71-3-37 (8) (b), which reads, "[t]he commission . . . *shall* in any case where the right to compensation has been controverted . . . make such investigation, cause such medical examinations to be made, hold such hearings, and take such further action as it considers will promptly protect the rights of all parties." Miss. Code Ann. § 71-3-37 (8) (b) (emphasis added). Viewing this language as a legislative mandate, she claims that ABC's pleading, although not presented on the appropriate form, served to accomplish the same objective, thereby triggering the agency's described duties. Although no authority precisely on point can be located, we do find direction in various Mississippi Supreme Court opinions which have repeatedly (1) noted the mandatory nature of such terminology in closely related contexts and, (2) emphasized the dispensability of the procedurally prescribed forms in light of the beneficent purposes of the Act. *See, e.g., Murphy v. Jac-see Packing Company*, 208 So. 2d 773, 777 (Miss. 1968) (examining use of term "shall" in § 71-3-37 (5)); *Harper* 601 So. 2d at 397 (accepting letter in lieu of formal petition to reopen). Therefore, we consider Doyle's reasoning sound -- to a point. Unfortunately she overlooks the language in § 71-3-37 (4) which similarly commands that "[i]f the employer controverts the right to compensation he *shall* file with the commission, on or before the fourteenth day after he has knowledge of the alleged injury or death, a notice . . . stating that the right to compensation is controverted . . . ." Miss. Code Ann. § 71-3-37 (4) (emphasis added). Due to the untimely filing of the pleading in the instant case, months later and following the voluntary payment of compensation, the investigatory obligation of the agency as described in § 71-3-37 (8) (b) did not arise until Doyle eventually pursued the claim herself. This conclusion is supported by *H.C. Moody & Sons v. Dedeaux*, 223 Miss. 832, 79 So. 2d 225 (1955), wherein our supreme court noted that in an uncontroverted case such as this, the file may be closed one year following an employer's form B-31 filing without any formal hearing. *Moody,* 223 Miss. at 844-45, 79 So. 2d at 228-30 (quoting former § 6998-27, now § 71-3-53, which provides that Commission's jurisdiction may terminate upon running of statute, "whether or not a compensation order has been issued")). We therefore hold this facet of the circuit court's judgment to be in error.

¶9. Additionally, although not essential to the disposition of this case, we feel compelled to note our express refusal to endorse Doyle's expansive assertions regarding the consequences had ABC's filing proven effective. We are unprepared to support the proposition that the controversion of a claim by an employer leaves its employee with utterly no responsibility to pursue his/her claim via answer or otherwise, thereby negating any subsequent form B-31 filing and staying the statute of limitations indefinitely. Despite our obligation to liberally construe the Act in favor of injured workers, we cannot nullify the claimant's obligation to act upon his/her rights in a reasonably expeditious fashion as expressed by the legislature in § 71-3-53.

*Entry of Appearance*

¶10. In support of his determination that the Entry of Appearance filed by Doyle's attorneys served independently to toll the statute, the trial judge cited *Harper v. North Mississippi Medical Center.* In *Harper,* our supreme court, as described above, accepted a note to the Commission composed by an unrepresented claimant in combination with the subsequent, timely submission of medical expenses in lieu of formal petition to reopen the case. *Harper,* 601 So. 2d at 397. Predictably, Doyle now defends this application of *Harper*, again urging a preference for substance above form. In response, ABC argues that the document, without additional action on Doyle's part, inadequately identified her intention to seek relief. We agree with ABC.

¶11. Ms. Harper's letter, in pertinent part, read as follows: "Because I am still having problems with my back, I still take medication when I have pain. Sometimes a pain comes in my sides. I am going to talk to

someone that can help me with this matter unless you all can advice [sic] me what to do about this." *Harper*, 601 So; 2d at 396. The court concluded that this plea clearly expressed an intent to pursue whatever remedies might be available. *Id*. In addition, the court considered the evidence that Harper's physician filed a Preliminary Medical Report (form B-9) when she sought further treatment for back pain only ten months into the limitations period and therefore found that the two events together constituted a sufficient request and enforcement of payment so as to serve as a substitute for a formal petition to reopen." *Id.* (citing *Martin v. Bausch & Lomb, Inc.*,388 N.Y.S.2d 60 (1976) (holding submission of medical reports sufficient substitute for application to reopen); *Costello v. Industrial Container Corp.,* 248 N.Y.S.2d 911 (1964) (holding same with regard to physician's letter to Commission)). In contrast, Doyle's "Petition for Acceptance and Entry of Appearance" specifically requested that it be considered precisely that and failed to provide any indication either as to the nature of her claim, i.e. her continued need for and intent to seek further treatment, or plans to pursue relief. As such, we agree with the commission's finding that it served as an inadequate substitute for a formal petition to controvert and cannot affirm the circuit court's characterization of this decision as arbitrary and capricious. *Submission of Expenses/Demand for Payment*

¶12. As for the June 1994 submission and demand for payment of medical expenses mentioned in the circuit court's order, we are unable to locate any evidence, direct or otherwise, that such a letter was indeed written. To the contrary, the order contains the sole reference within the record before us to any such document. During the hearing before the ALJ, Doyle failed to mention any specific recollection of either herself or her former counsel having taken such action. In fact, as is clear from the following excerpt, she could not state with any degree of certainty whether she or her then-attorney was in possession of the medical bills during the relevant time period:

> Q. [Y]ou didn't submit any of those medical bills or have them forwarded to the insurance carrier in this case at any time, did you?
>
> A. No. I don't know.
>
> Q. You turned them all in on Blue Cross Blue Shield, didn't you?
>
> A. Probably did. I just don't remember.
>
> Q. You remember telling me in your deposition approximately seven or eight months ago that you had not sent any of those bills to [the carrier]?
>
> A. If I said that okay.
>
> Q. Did you present any of those to your attorneys prior to Mr. Akins?
>
> A. Well I just gave them everything I had so I'm sure that it was in there.
>
> Q. So you have no idea --- you personally did not send them or you have no idea if any of those bills or medical reports or anything were sent in by anyone prior to Mr. Akins?
>
> A. I'm not sure.

The resulting opinion of the ALJ details the argument presented by Doyle during the hearing, that, as

discussed above, the employer's Notice of Controversy tolled the statute. However, consistent with Doyle's testimony, no mention of any submission appears therein. Moreover, in neither his petition seeking full Commission review of that opinion nor his subsequent appeal to the circuit court did Doyle's present attorney make any reference to such a document, let alone base his contention of error on its existence. With no evidence to the contrary, we must again defer to the factual findings of the ALJ as affirmed by the full Commission and choose not to speculate as to the outcome under *Harper* if the letter were substantiated by the record.

¶13. **THE JUDGMENT OF THE CIRCUIT COURT OF BENTON COUNTY IS REVERSED AND THE ORDER OF THE WORKERS' COMPENSATION COMMISSION IS REINSTATED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, HERRING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR. DIAZ, J., CONCURS IN RESULT ONLY.**